## Metropolitan Life Insurance Co. v. Hainsworth.

(Decided June 18, 1935.)

CHENAULT HUGUELY and P. M. McROBERTS for appellant.

B. D. HERNDON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The determinate question here presented is one of law, the evidence not being conflicting.

On the 4th day of January, 1933, Thomas H. Hainsworth, a railroad engineer, made a written application to the Metropolitan Life Insurance Company for a policy, insuring his life for $1,000. The application contained these questions and answers:

"Q. What is the condition of your health? A. Good.

"Q. When last sick? A. February 1927.

"Q. Nature of last sickness? A. Pneumonia.

"Q. How long sick? A. Two weeks.

"Q. Have you been attended by a physician during the last five years? If yes, give names of complaints, dates, how long sick and names of physicians. A. No.

"Q. Have you ever had any of the following complaints or diseases: apoplexy, appendicitis, asthma, bronchitis, cancer or other tumor, consumption, diabetes, disease of heart, disease of kidneys, disease of liver, disease of lungs, fistula, fits or convulsions, goitre, habitual cough, insanity, colic, jaundice, paralysis, pleurisy, pneumonia, rheumatism, scrofula, syphilis, spinal disease, spitting of

blood, varicose veins? If yes, give particulars, dates and duration? A. Pneumonia in February 1927. I sat up and at work in three weeks."

In this application he agreed "that the foregoing statements and answers are correct and wholly true, and, * * * they shall form the basis of the contract of insurance, if one be issued."

M. Bryant, as agent of the insurance company, accepted the application and transmitted it to the company. On the same day, Hainsworth was examined by Dr. J. R. Steele, medical examiner of the company. A complete report of his examination was · immediately forwarded to the company. In it, he was asked:

"Q. Do you consider the applicant as first class average or poor? A. First class."

Thereafter, on February 1, 1933, the policy for a paid premium was issued and delivered to Hainsworth, in which Nannie Hainsworth was designated the beneficiary. The insured died of cerebral hemorrhage on May 4, 1933. Due notice and proof of death were furnished by the beneficiary to the Metropolitan Life Insurance Company. It declined to recognize liability. This action was instituted to recover the face of the policy.

The insurance company in its answer set forth the questions and answers embraced in the application as they are set out above, and affirmatively alleged that, on April 13, 1932, each and all the answers were false and material to the insurance risk, and that at the time of the issuance of the policy it relied upon the truth of each and all the answers, believing them to be true, "and that under the general custom and practice among life insurance companies and of this defendant it would not have issued said policy of insurance if said Hainsworth had made true answers to the questions above set out and had informed defendant that he had been treated by a physician within five years before making and delivering application or that prior thereto he had been suffering with high blood pressure, or had it known that the health of said Hainsworth was not good due to his aforesaid physical infirmity," and further averred these facts were a violation of the insurance contract and constitute a bar to the beneficiary's rights of recovery. It assumed the burden of proof.

The evidence discloses that on April 18, 1932, at Oakdale, Morgan county, Tenn., Thomas Hainsworth went to the office of Dr. W. E. Gallion for examination and treatment. Dr. Gallion made a personal examination and found he had "hypertension" or high blood pressure; "his systolic pressure was about 200." Dr. Gallion stated:

"I consider a systolic pressure about 200 a danger signal; that the man is very likely to have a ruptured artery causing apoplexy."

At the time of the trial, this stipulation was read to the jury:

"It is agreed herein that if Dr. W. E. Gallion were sworn as a witness for the defendant he would testify as follows: 'That after he examined Thomas Hainsworth in his office at Oakdale, Tennessee, on April 18th, 1932, and found him suffering with a rather high blood pressure, above 200 systolic, he told Hainsworth of the result of his examination and advised him to take an extended complete rest at that time.' "

Dr. Gallion further testified that Hainsworth returned to his office on May 2, 1932, and paid him for services rendered April 18, 1932. He made no further examination of Hainsworth. He stated that, with this high blood pressure, Hainsworth could have worked "for nearly a year driving an engine without any apparent sickness or disability, though the hypertension or high blood pressure was during the time continuous."

No evidence was offered controverting Dr. Gallion's testimony.

It is shown by the testimony of Drs. W. H. Smith and Walter W. Bennett that they had had experience and were familiar with the general custom, prevailing practice, and rules of life insurance companies, governing their actions on applications for life insurance, wherein questions were propounded to, and answered by, an applicant for a policy on his life, and that acting reasonably and naturally in accordance with the practice usual in life insurance companies under similar circumstances, insurance companies would not have accepted Hainsworth's application and issued the policy thereon, if the substantial truth as to his examination

by Dr. Gallion and the high blood pressure then appearing, as described by Dr. Gallion, had been stated in Hainsworth's answers.

To rebut their testimony, the beneficiary introduced H. M. Lacefield and L. M. Hilliard, who claimed they were familiar with the custom, practice, and rules of insurance companies generally observed in such case, and according to their knowledge thereof, the insurance companies would have done one of two things: Reject the application, or make an investigation by trying to get in touch with the doctor who had made the previous examination, and get a statement from him as to the applicant's condition at that time, and if they had re-examined him and found him a first-class risk, they would have accepted him. It was their consentient opinion that the insurance companies, had they known that Hainsworth had had this high blood pressure, they would have gone further into the case, and if it had been proved by a later examination that he was alright at that time, "they would have possibly issued the policy."

It must be observed that in essence and in effect there is no conflict in the testimony of Drs. Smith and Bennett and Lacefield and Hilliard. The substance of the testimony of the latter is, the companies, according to the usual, customary practice and rules generally observed by insurance companies, if the information had been imparted by Hainsworth in his answers to the questions propounded to him that he had been examined on April 13, 1932, by Dr. Gallion and was at that time running a systolic blood pressure of about or over 200, they would not have accepted his application and issued the policy thereon, although examined by a physician at the time of the making of the application without further examination.

The evidence on the sole issue being free of conflict or contradiction, the question became one of law. The Metropolitan Life Insurance Company was entitled to a directed verdict in its favor.

The beneficiary objected to certain questions propounded to Dr. Smith. Even though the court erred in overruling the objection and in admitting the answers of the witness, the evidence, notwithstanding the court's error, if any, being without contradiction on the mate-

rial issue, the error is immaterial and nonprejudicial, for if the objectionable questions and answers were excluded, the competent evidence calls for a directed verdict.

For the reasons indicated, the judgment is reversed for a new trial consistent herewith.